Case 2:18-cv-00220 Document 91 Filed on 06/11/20 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
June 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RAUL GONZALEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-220 |
| § | |
| BRYAN GORDY, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANT RESENDEZ'S MOTION TO DISMISS
AND TO RETAIN PLAINTIFF'S EXCESSIVE FORCE CLAIM**

Plaintiff Raul Gonzalez, proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. (D.E. 1). Pending is Defendant Josie Resendez' Motion to Dismiss. (D.E. 77). For the reasons set forth below, it is respectfully recommended that Defendant Resendez' motion be **GRANTED,** and that Plaintiff's deliberate indifference claim against her be **DISMISSED with prejudice**. It is respectfully recommended further that, under the screening provision of 28 U.S.C. § 1915(e)(2)(B), Plaintiff's excessive force claim against Defendant Resendez be **RETAINED**.

**I.      JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently residing at the Stiles Unit in Beaumont, Texas. Plaintiff's allegations and claims in this case arise in connection with his previous assignment to the Garza East Unit in Beeville, Texas.

In his original complaint, Plaintiff sues the following defendants in their individual capacities only: (1) Bryan Gordy, the Warden of the Garza East Unit; (2) John Doe Nurse; (3) Jane Doe Sergeant; and (4) Medical Director Julianna Lindsey. (D.E. 1, p. 7). Plaintiff claims that his rights were violated when he was denied medical care and that he suffered injuries as a result. Plaintiff seeks monetary relief. (D.E. 1, p. 8).

On October 31, 2018, Magistrate Judge B. Janice Ellington ordered service of Plaintiff's complaint on each of the four defendants. (D.E. 16). Travis Emmerson was identified as Defendant John Doe Nurse, and he filed an answer on December 17, 2018. (D.E. 22).

On April 25, 2019, Magistrate Judge Ellington issued a Memorandum and Recommendation (Lindsey M&R), recommending in pertinent part that Plaintiff's Eighth Amendment claims of deliberate indifference against Dr. Lindsey be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief. (D.E. 36). Senior District Judge Hilda G. Tagle subsequently adopted the Lindsey M&R and dismissed Plaintiff's claims against Dr. Lindsey. (D.E. 48).

On April 25, 2019, Magistrate Judge Ellington issued another Memorandum and Recommendation (Gordy M&R), recommending that Warden Gordy's motion to dismiss

be granted on the issue of qualified immunity and that Plaintiff's claims against Warden Gordy be dismissed for failure to state a claim upon which relief can be granted. (D.E. 35). Senior District Judge Tagle declined to adopt the recommendation in the Gordy M&R to grant Warden Gordy's motion to dismiss. (D.E. 78).

Because service was not effectuated on Defendant Jane Doe, Magistrate Judge B. Janice Ellington enlisted the parties' assistance in attempting to ascertain the identity of Defendant Jane Doe. Information was provided to the Court identifying Sergeant Josie Resendez as Defendant Jane Doe. Judge Ellington, therefore, ordered that Sgt. Resendez be substituted in place of Defendant Jane Doe. (D.E. 68).

On January 3, 2020, Magistrate Judge Ellington ordered service of Plaintiff's complaint on Sgt. Resendez. (D.E. 69). On February 14, 2020, Sgt. Resendez filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 77). Plaintiff subsequently filed his response. (D.E. 90).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff provides the following allegations in his original complaint (D.E. 1): On or around February 20, 2017, Plaintiff sought medical attention because he could barely see or walk and had suffered from a fever for over three days. (D.E. 1, p. 8). Nurse Emmerson refused to check Plaintiff's vitals, ignored his complaints, and called on a sergeant to have Plaintiff forcibly removed from medical. (D.E. 1, p. 8).

Sgt. Resendez ordered that force be used to remove Plaintiff and observed other officers bending Plaintiff's limbs, slamming him into a brick wall, and digging into his back and spine with their elbows. (D.E. 1, p. 8). Plaintiff ultimately was denied

emergency care, which ultimately resulted in pneumonia, cardiac arrest, paralysis, kidney failure, permanent nerve damage, incontinence, and emotional suffering. (D.E. 1, p. 8).

Plaintiff attached a grievance form, dated May 4, 2017, in which he recounted facts similar to the allegations offered in his form complaint. (D.E. 1, p. 6). On or around February 28, 2017, Plaintiff became very ill, could not balance or see straight, and was nauseated. Sgt. Resendez allowed Plaintiff to visit medical, Nurse Emmerson told him to leave because he did not have a pass to be there. Plaintiff explained his situation, but Nurse Emmerson called to have him forcibly removed. Plaintiff asked Sgt. Resendez to make Nurse Resendez check his vital signs, but Nurse Emmerson lied and said he had already done so and that Plaintiff was fine. Officials told Plaintiff to return to his dorm, but when he asked for a wheelchair because he could not see or balance well enough to get back, he was shoved against a wall and handcuffed. Sgt. Resendez then changed her mind, took the handcuffs off, and told Nurse Emmerson to check Plaintiff's vitals.

Nurse Emmerson's examination revealed that Plaintiff had a fever, and he was placed in quarantine for five to seven days. On the final day of quarantine, Plaintiff had a fever of 104.7 degrees and was taken to the hospital. Plaintiff developed pneumonia, went into cardiac arrest, and was placed on a respirator. A CAT scan also showed that he had a recent spinal injury and, when he woke up in the hospital, he was paralyzed from the waist down. "[Plaintiff] subsequently died and was placed on life support." (D.E. 1, p. 6). In response to Plaintiff's grievance, the medical practice manager reviewed Plaintiff's records which showed that Plaintiff received emergency care at the Garza East Unit on February 24, 2017 and was sent to a hospital on March 1, 2017. (D.E. 1, p. 6).

### IV. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### V. DISCUSSION

#### A. Deliberate Indifference to Serious Medical Needs

Plaintiff claims that Sgt. Resendez acted with deliberate indifference to his serious medical needs. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials

refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter*, 467 F.3d at 464 (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).

Sgt. Resendez contends in her Motion to Dismiss that Plaintiff has failed to offer allegations that she knew of and disregarded an excessive risk to Plaintiff's health and safety. (D.E. 77, p. 10). According to Sgt. Resendez, her conduct amounted to nothing

more than negligence and does not rise to the level of a constitutional claim. (D.E. 77, p. 9). Plaintiff responds that Sgt. Resendez acted with deliberate indifference to his serious medical needs by ordering a use of force against Plaintiff while knowing he was handicapped and debilitated. (D.E. 90, pp. 4, 11-12).

With respect to Sgt Resendez' conduct, Plaintiff alleges that: (1) Sgt. Resendez initially granted Plaintiff permission to visit medical on or around February 28, 2017; (2) Nurse Emmerson told Plaintiff he had to leave because he did not have a "lay-in" pass to be there; (3) Nurse Emmerson then called to have Plaintiff forcibly removed from medical; (3) Plaintiff asked Sgt. Resendez to make Nurse Emmerson check his vital signs, but Nurse Emmerson lied and said he had already done so and that Plaintiff was fine; (4) medical officials refused Plaintiff's request for a wheelchair because he could not see and had trouble with his balance; (5) Sgt. Resendez then ordered Plaintiff to be removed forcibly and observed other officers bending Plaintiff's limbs, slamming him into a brick wall, and digging into his back and spine with their elbows; (6) Sgt. Resendez then changed her mind, took the handcuffs off, and told Nurse Emmerson to check Plaintiff's vitals; and (7) Nurse Emmerson's subsequent examination revealed that Plaintiff had a fever, leading to Plaintiff's placement in quarantine for five to seven days. (D.E. 1, pp. 6, 8).

Sgt. Resendez is not a medical official and did not have any involvement in the decision to deny Plaintiff medical care. Contrary to Plaintiff's contention that Sgt. Resendez was well informed that Plaintiff needed emergency care, Plaintiff's allegations in his complaint reflect that her decision to forcibly remove Plaintiff was based on her

belief that Plaintiff had received medical attention and was fine per Nurse Emmerson. Indeed, as alleged in the complaint, Nurse Emmerson initially called upon Sgt. Resendez to remove Plaintiff from medical. Sgt. Resendez, after having Plaintiff forcibly removed, quickly realized that something was wrong with Plaintiff and immediately called for Nurse Emmerson to check Plaintiff's vitals. Accepting Plaintiff's allegations as true, therefore, they fail to indicate that Sgt. Resendez was aware of facts from which she could infer an excessive risk of substantial harm to Plaintiff or that she actually inferred that such an excessive risk existed.

Even if Plaintiff could satisfy the subjective prong of deliberate indifference with respect to Sgt. Resendez' conduct, her removal of Plaintiff from medical only caused Plaintiff a temporary delay in receiving medical attention. Plaintiff has failed to allege facts to suggest that such a short delay in receiving medical treatment by the nurse and other medical personnel was the cause for any lasting medical complications or otherwise resulted in any substantial harm to him. *See Guzman v. Cockrell*, No. 9:10CV111, 2012 WL 4017926, at *7 (E.D. Tex. Sep. 4, 2012) (holding that a twelve-hour delay in receiving treatment by medical personnel for fractured ribs and collar bone, even where the prisoner was suffering in pain, did not constitute deliberate indifference); *Parker v. Doty*, No. 7:08-CV-029, 2009 WL 804098, at *2 (N.D. Tex. Mar. 25, 2009) (holding that increased back pain caused by delay in receiving medication does not constitute substantial harm); *James v. UTMB Medical Center*, No. 6:09-CV-489, 2010 WL 3429583, at *4 (E.D. Tex. Aug. 27, 2010) (holding that delay in providing pain medication without substantial harm is not deliberate indifference).

Accordingly, it is respectfully recommended that Sgt. Resendez' Motion to Dismiss (D.E. 77) be granted and that Plaintiff's deliberate indifference claim against her be dismissed for failure to state a claim for relief.

### B. Qualified Immunity

With regard to Plaintiff's deliberate indifference claim against Sgt. Resendez in her individual capacity, the doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S. at 236. In this case, because Plaintiff has failed to establish an Eighth Amendment claim of deliberate indifference against Sgt. Resendez in her individual capacity, it is not

necessary to examine whether her actions were objectively reasonable. Accordingly, it is respectfully recommended that Sgt. Resendez is entitled to qualified immunity with respect to this claim.

### C.     Excessive Force

Liberally construed, Plaintiff also raises a claim of excessive force in her complaint against Sgt. Resendez. Sgt. Resendez does not address the excessive force claim in her Motion to Dismiss. Under the screening provision of § 1915(e)(2)(B), the undersigned will consider whether this claim should be dismissed. This section mandates dismissal "at any time" any action that "fails to state a claim on which relief may be granted" or "is frivolous or malicious." 28 U.S.C. 1915(e)(2)(B)(i), (ii).

Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992). The factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*,

503 U.S. at 4. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40. The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

In his response to Sgt. Resendez' Motion to Dismiss, Plaintiff extensively complains about the malicious use of force by officers who acted at Sgt. Resendez' direction. (D.E. 90, pp. 8-11). Plaintiff's complaints in his response echo his allegations set forth in his original complaint where he stated that: (1) Sgt. Resendez ordered force to be used to remove Plaintiff from medical; and (2) her subordinate officers proceeded to bend Plaintiff's limbs, slam him into a brick wall, and dig into his back and spine with their elbows. (D.E. 1, p. 8). Plaintiff further suggests in his original complaint that his subsequently-diagnosed spinal cord injury and paralysis below the waist may have been exacerbated due to the actions of officers acting on Sgt. Resendez' orders. (D.E. 1, p. 8).

A supervisor who orders the use of force can be held liable in an excessive force case when there exists a causal connection between the supervisor's actions and the actions of the subordinates which cause the injury. *See Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 991 (E.D. Tex. 2006) (citing *Cousin v. Small*, 325 F.3d 627, 637-38 (5th Cir. 2003). Taken as true, Plaintiff's allegations suggest that Sgt. Resendez ordered the use of force to be carried out maliciously and sadistically and that Plaintiff suffered more than a *de minimis* injury as a result of the use of force. Thus, it is respectfully

recommended that Plaintiff's excessive force claim against Sgt. Resendez in her individual capacity be retained.

## VI. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the Court **GRANT** Sgt. Resendez' Motion to Dismiss (D.E. 77) and that Plaintiff's deliberate indifference claim against Sgt. Resendez be **DISMISSED with prejudice** for failure to state a claim for relief and because she is entitled to qualified immunity as a matter of law. It is respectfully recommended further that, under the screening provision of § 1915(e)(2)(B), Plaintiff's excessive force claim against Sgt. Resendez in her individual capacity be **RETAINED**.

ORDERED this 11th day of June, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).